IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA CONNERS<br>26 Carter Place<br>Carlisle, PA 17013 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No.: |
| v. | : <br> : | **JURY TRIAL DEMANDED** |
| COUNTY OF YORK, a/k/a YORK<br>COUNTY<br>28 E. Market Street<br>York, PA 17401 | : <br> : <br> : <br> : <br> : | |
| Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I.      INTRODUCTION

1. This action has been initiated by Rebecca Conners (*hereinafter* referred to as "Plaintiff") against the County of York (*hereinafter* referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000d *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### II.      JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII. Plaintiff's PHRA claims will mirror identically her federal claims under Title VII.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein under the Title VII, and has properly exhausted her administrative remedies by timely filing 2 separate Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving notices of dismissal and/or right to sue letter from the EEOC (as to both separate Charges).

### III. PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. The County of York ("Defendant") is a political subdivision of the Commonwealth of Pennsylvania and a municipality in Southeastern Pennsylvania. Defendant's population ranges from 450,000 – 500,000 people, and Defendant was established in 1749.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.  FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a homosexual (lesbian) female.[2]

12. Plaintiff was hired by Defendant effective on or about January 11, 2021; and in total, Plaintiff was employed with Defendant for approximately 13 months until termination (as outlined *infra*).

13. Although Plaintiff identifies in the caption of this lawsuit Defendant's primary office(s), Plaintiff physically worked for Defendant from 120 Davies Drive, York, PA 17402 during her entire tenure.

14. Plaintiff was hired by Defendant to work in the position of Communications Supervisor. Defendant referred to Plaintiff's initial role within Defendant as that of 911 Shift Supervisor in response to aforesaid Charges filed with the EEOC.

15. Plaintiff was primarily supervised by Matt Hobson ("Hobson"), Director of 911 for Defendant, upon hire *and for a limited time thereafter*.

16. Shortly into Plaintiff's tenure with Defendant, she was being used to train others based upon her skill, experience, and demonstrated abilities. Effective on or about July 23, 2021, Defendant formally converted Plaintiff to a Training Supervisor – 911 effective on or about July 23, 2021.

---

[2] Plaintiff states this allegation as to her current relationship. She is bisexual but in a lesbian relationship, which was known to Defendant's management.

17. While being used in the role of Training Supervisor pre-July 2021 and post-July 2021 (irrespective of formal change), Plaintiff had been transitioned to report primarily to Christopher Lorenzen ("Lorenzen"), Deputy Director of 911 for Defendant.

### [A] **Plaintiff engaged in numerous state- and federally-protected activities *immediately preceding* her retaliatory termination from employment.**

18. Plaintiff formed the opinion that Lorenzen was discriminatory in management towards women and gay or lesbian females in general. She had previously raised numerous verbal complaints. But between December of 2021 through February of 2021 (*in the 2 months preceding her termination*, Plaintiff drastically escalated her complaints of "discriminatory" treatment (resulting in a transparently-retaliatory termination from employment).

19. **On December 14, 2021**, Plaintiff sent an e-mail to Julie Wheeler ("Wheeler"), who is Defendant's Commissioner. In this lengthy e-mail, Plaintiff explained *inter alia*:

   a) "I have gone up the chain of command on several occasions to no avail;"

   b) Numerous internal operational, organizational and management problems;

   c) "I am only the second employee, both of us being Homosexual Women (which is a protected class under the EEOC) told to leave for "unapproved overtime" . . . "we have both made complaints about [Lorenzen];"

   d) "Women in this department are treated as second rate;"

   e) She witnessed Nicholai Stambaugh being "bullied for his sexual orientation" causing "the employee to resign;" and

   f) "I have put up with the hostile work environment."

20. **On December 27, 2021**, Plaintiff filed a Charge with the EEOC. Plaintiff explained *inter alia*:

   a) She was proceeding on checked boxes of unlawful treatment for "sex" and "retaliation;"

   b) She has "been continuously harassed by [her] Supervisor, Christopher Lorenzen;" and

  c) She has "been discriminated against because of [her] sex (female) and [her] partner being a transgender."

21. Defendant received a copy of Plaintiff's EEOC Charge by January of 2022, as such information had been shared with Plaintiff by Defendant directly.

22. **On February 7, 2022**, Plaintiff e-mailed Kimberly Rinker (a Deputy Director) and (a Deputy Administrator and Chief Clerk) that she is forwarding information "to the EEOC" and expressed concerns of retaliation further referencing her prior complaint to the EEOC.

23. The 3 instances above between December and February of 2022 *are only intended to serve as examples* (for purposes of lawsuit notice) of the types of complaints Plaintiff was making of discrimination and retaliation, **not** an all-inclusive or exhaustive list of such complaints. Plaintiff in fact expressed other similar complaints in this timeframe as well to different levels of management.

  **[B] Plaintiff was terminated by Defendant following substantial antagonism towards her and a refusal to investigate and talk to her *because of* her EEOC Charge(s).**

24. By December (2021) and January (2022), Lorenzen had become so hostile towards Plaintiff that: (a) he spoke abusively and demeaning to Plaintiff; (b) tried to ignore her in between outbursts towards her; and (c) continued to make her assignments, schedule, days off, and other aspects of the workplace intentionally difficult for her.

25. In an annual performance evaluation dated December 17, 2022 (following complaints of discrimination by Plaintiff), Lorenzen rated Plaintiff "unsatisfactory" as to interpersonal relationships in the workplace and "needs improvement" as to leadership for a single instance of her expressing opposition to being yelled at by him in a staff meeting.

26. When Plaintiff was scheduled for a meeting to talk with high-level management and Respondent's legal counsel **to finally address** her concerns of discriminatory and retaliatory

5

treatment in or about January of 2022, the anticipated meeting was canceled and not further scheduled. This was because Plaintiff was directly informed by Defendant's management that Defendant was canceling any meeting to address her concerns and would instead cooperate with the EEOC.

27. Importantly, an employee's filing with an agency or court does not alleviate an employer's legal obligation from conducting an internal investigation, from resolving internal concerns, or meeting with an employee about his or her discrimination / retaliation concerns. Yet, Defendant acknowledged that because Plaintiff initiated a complaint to the EEOC, Plaintiff's workplace concerns would not be addressed directly by administration, human resources, or its counsel.

> **[C] Plaintiff was terminated from Defendant right after her meeting to discuss discrimination and retaliation concerns was canceled, while Defendant was requesting an extension from the EEOC to respond to Plaintiff's legal claims, and for completely pretextual reasons.**

28. As of February 2022, Plaintiff had worked for Defendant for approximately 13 months.

29. As of February 2022, Plaintiff had never received any written discipline, any performance improvement plans, or any document that could warn Plaintiff of any potential discipline or termination. Plaintiff was an exemplary performer who worked very hard and took her job very seriously.

30. And although Plaintiff identified *supra* (in this lawsuit) 2 ratings in her December 17, 2022 annual performance evaluation that she construed as retaliatory; the overall evaluation was "Satisfactory." For example, Plaintiff was identified as having "thorough knowledge," handling problem resolution satisfactorily, being "positive" with the public and interacting effectively with the public – and as stated previously – she was rated "Overall" as "Satisfactory."

31. In defending Plaintiff's EEOC filings, Defendant stated Plaintiff's annual evaluation "was not" "bad," explaining Plaintiff was viewed as at least a "Satisfactory" performer by Defendant through December of 2021.

32. Hence, both Plaintiff and Defendant agree that she had no record of discipline or unsatisfactory overall performance prior to the timeframe of Plaintiff's termination (in February of 2022).

33. Without any adequate due process or opportunity to understand the specific rationale for her termination, Plaintiff was informed she was terminated effective on or about February 11, 2022.

34. In terminating Plaintiff, Plaintiff was given a barrage of vague reasons for her termination such as targeting another employee, dishonesty, and other generic termination policy terminology.

35. During EEOC proceedings and within Defendant's response to Plaintiff's EEOC filings, Defendant elaborated slightly more on Plaintiff's purported termination basis. Therein, Defendant claimed Plaintiff was terminated because "a substantial call volume" of recorded calls was sought or received by Plaintiff and another manager (Joann Probst – an Operations Manager). Defendant claimed the volume of calls sought on a particular subordinate employee was a violation of Defendant's procedures.

36. As a result of the foregoing, Defendant terminated 2 gay females (Plaintiff and Probst) - - both on February 11, 2022.

37. The rationale for Plaintiff's termination was false, discriminatory and retaliatory as:

    (1) It was within Plaintiff's job duties and authority to request or review recordings of employees, as she was a training supervisor;

    (2) It was within Probst's authority as an Operations Manager to request or review recordings of employees, as she was responsible for operations;

    (3) There were numerous legitimate reasons for Probst (or Plaintiff) seeking to review calls of an employee, as: (a) she the specific employee had received numerous complaints; (b) for quality assurance; and (c) Probst was using example calls to get acclimated to Defendant's system(s) and/or software;

    (4) Plaintiff was merely asked to assist Probst, and Plaintiff had not even had any opportunity to review 911 call recordings of the specific employee prior to her abrupt termination from employment.

38. Plaintiff was terminated for something she was asked to assist with by another manager <u>and</u> for an issue that is within the scope of her authority and job duties. Instead of praising Plaintiff for going above and beyond, Plaintiff was terminated because too many calls of a specific employee were requested for review (which Defendant elected to couch as "targeting" for a termination basis).

39. The excuse for Plaintiff's termination is frankly absurd and nothing short of illustrative of searching for *any possible* reason to claim Plaintiff should be terminated. If Plaintiff were told that even though something was in her authority that requesting too many employee calls for review could be construed as a policy violation, a simple verbal discussion would have been more than sufficient to avoid voluminous requests in the future.

40. Other employees or management engaged in substantial policy violations and were not terminated, let alone the subject of major discipline.

### Count I
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
**(Wrongful Termination)**

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. Plaintiff was terminated by Defendant because of:

       [1] her protected activities (and legal complaints) and in retaliation for same; and

       [2] her gender and/or sexual orientation, as: (a) employees who committed far more egregious offenses were not terminated; (b) she was mistreated continually on account of such characteristics during her employment; and (c) Defendant simultaneously terminated the 2 female managers who were both gay (and both for false reasons).

30. These actions as aforesaid constitute violations of Title VII of the Civil Rights Act of 1964 ("Title VII").

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting harassment, discrimination, and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D. Plaintiff is to be awarded other damages if legally permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G.Plaintiff is to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:_____
Ari R. Karpf, Esquire
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 18, 2022